**NOT FOR PUBLICATION**

RECEIVED
APR 12 2013
AT 8:30_____M
WILLIAM T. WALSH CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUSTIN CABOT,<br><br>    Plaintiff,<br><br>v.<br><br>MIDDLESEX COUNTY PROS. OFFICE, et al.,<br><br>    Defendants. | Civil Action No. 12-36 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

Plaintiff, Justin Cabot, a prisoner incarcerated at South Woods State Prison, filed a Complaint asserting violation of his rights under 42 U.S.C. § 1983. Having reviewed Plaintiff's submissions, as required by 28 U.S.C. § 1915A, this Court will dismiss the federal claims raised in the Complaint and decline to exercise supplemental jurisdiction.

**I. BACKGROUND**

Justin Cabot brings this Complaint for violation of his constitutional rights under 42 U.S.C. § 1983 against the Middlesex County Prosecutor's Office and Assistant Prosecutors Linda Mercurio and Lisa Walsh-Morales. He asserts the following facts:

> Lisa Walsh & Linda Mercurio maliciously prosecuted me with zero paper trail, D.N.A., fibers, forensics of ANY KIND. They corrupted exculpatory evidence (surveil[l]ance footage). From the date of July 26, 2006 until my acquit[t]al[] on March 13 2008. They used ficti[t]ious probable cause to use my photo in a suggestive photo array (which Judge Stolte acknowledged some defin[i]te signs of impermissible suggestiveness). They never used main witness in any type of identification procedure until in a desperate attempt at trial, which witness DID NOT IDENTIFY ME. This could['] ve been done 3 years earlier and eliminated me as a subject. During all this time my family was devastated. I lost job

> opportunity, family relations perman[e]ntly tainted, mental health deteriorated, and medical issues progressed without proper care (at times NO CARE AT ALL). Shortly after trial I had a complete mental breakdown which cost me irreversible damage. To this day I struggle with medical problems and permanent mental health damage (fear, paranoia, restlessness & related post-traumatic S.D.). Ultimately, this malicious prosecution has directly & indirectly caused me permanent, irreversible damage plus chronic pains and poor quality of life.

(Dkt. 1 at 6.) Plaintiff seeks the following relief:

> I respectfully request financial reparation. Coverage for loss of job, plus coverage for future employment difficulties. I ask for proper medical care, treatment & diagnosis. I ask for consideration on damages that cannot be repaired. I ask for an HONEST & JUST evaluation and payment/amends on what being innocently incarcerated does to a human being. I ask for equal accountability. I faced my possible penalties & now I ask the same for prosecution. My request in TORT claim is in the amount of $10,000,000.00.

(Dkt. 1 at 7.)

## II.   ANALYSIS

### A.   Standard of Review

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding *in forma pauperis* or a prisoner is seeking redress against a government employee or entity, and to *sua sponte* dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957),[1] which was

---

[1] The *Conley* court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. at 45-46.

2

previously applied to determine if a federal complaint stated a claim. *See Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009). To survive dismissal under *Iqbal*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Iqbal*, 556 U.S. at 678 (citation omitted). Officials may not be held liable under § 1983 for the unconstitutional misconduct of their subordinates. *Id.* at 677. Rather, the facts set forth in the complaint must show that each defendant, through the person's own individual actions, has violated the plaintiff's constitutional rights. *Id.* This Court must disregard labels, conclusions, legal arguments, and naked assertions. *Id.* at 678-81. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief," and will be dismissed. *Id.* at 678 (citations and internal quotation marks omitted); *see also Santiago v. Warminster Township*, 629 F. 3d 121, 130 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009) ("a complaint must do *more than allege the plaintiff's entitlement to relief.* A complaint has to "show" such an entitlement with its facts") (emphasis supplied). The Court is mindful, however, that the sufficiency of this *pro se* pleading must be construed liberally in favor of the plaintiff, even after *Iqbal*. *See Erickson v. Pardus*, 551 U.S. 89 (2007).

**B. Federal Claims**

Section 1983 of Title 28 of the United States Code provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution

and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Supreme Court held that a prosecutor is absolutely immune from damages under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process," *id.* at 430-31, including use of misleading or false testimony and suppression of evidence favorable to the defense by a police fingerprint expert and investigating officer. Since *Imbler*, the Supreme Court has held that "absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (citations omitted). In *Van de Kamp*, the Supreme Court further held that, although the challenged conduct of the prosecutor may be categorized as administrative, a supervisory prosecutor is absolutely immune for failing to adequately train and supervise district attorneys on the duty not to withhold impeachment evidence and the failure to create any system for accessing information pertaining to the benefits provided to jailhouse informants. The Supreme Court explained:

> [Petitioner's] claims focus upon a certain kind of administrative obligation - a kind that itself is directly connected with the conduct of a trial. Here, unlike with other claims related to administrative decisions, an individual prosecutor's error in the plaintiff's specific criminal trial constitutes an essential element of the plaintiff's claim. The administrative obligations at issue here are thus unlike administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like. Moreover, the

4

> types of activities on which Goldstein's claims focus necessarily require legal knowledge and the exercise of related discretion, e.g., in determining what information should be included in the training or the supervision or the information-system management. And in that sense also Goldstein's claims are unlike claims of, say, unlawful discrimination in hiring employees. Given these features of the case before us, we believe absolute immunity must follow.
>
> We reach this conclusion by initially considering a hypothetical case that involves supervisory or other office prosecutors but does not involve administration. Suppose that Goldstein had brought such a case, seeking damages not only from the trial prosecutor but also from a supervisory prosecutor or from the trial prosecutor's colleagues - all on the ground that they should have found and turned over the impeachment material about Fink. *Imbler* makes clear that all these prosecutors would enjoy absolute immunity from such a suit. The prosecutors' behavior, taken individually or separately, would involve preparation . . . for . . . trial, and would be intimately associated with the judicial phase of the criminal process because it concerned the evidence presented at trial. And all of the considerations that this Court found to militate in favor of absolute immunity in *Imbler* would militate in favor of immunity in such a case.
>
> The only difference we can find between *Imbler* and our hypothetical case lies in the fact that, in our hypothetical case, a prosecutorial supervisor or colleague might himself be liable for damages *instead* of the trial prosecutor. But we cannot find that difference (in the pattern of liability among prosecutors within a single office) to be critical. Decisions about indictment or trial prosecution will often involve more than one prosecutor . . . . We do not see how such differences . . . could alleviate *Imbler*'s basic fear, namely, that the threat of damages liability would affect the way in which prosecutors carried out their basic court-related tasks.

*Van de Kamp*, 555 U.S. at 344-45.

In this Complaint, Plaintiff asserts that two assistant prosecutors maliciously prosecuted him without adequate evidence on the basis of a suggestive photo array, and failed to determine whether the witness could identify him prior to trial. He further alleges that he was acquitted in 2008. However, prosecutors are absolutely immune from claims for malicious prosecution. *See Rehberg v. Paulk*, 132 S. Ct. 1497, 1504 (2012). In addition, absolute immunity protects a prosecutor from damages for "initiating a prosecution and . . . presenting the State's case." *Imbler*, 424 U.S. at 430-31. Because the misconduct alleged in the Complaint consists of acts

5

taken by the named prosecutors in their role as advocates for the state, the § 1983 claims against them will be dismissed on the ground of absolute immunity.

Plaintiff also names the Middlesex County Prosecutor's Office as defendant. The capacity of an entity to be sued is determined by New Jersey law. *See* Fed. R. Civ. P. 17(b). Under New Jersey law, the Middlesex County Prosecutor's Office does not have a legal existence separate from the Middlesex County Prosecutor himself or herself. *See, e.g.*, N.J. Const., art. VII, § 2, ¶ 1 (establishing county prosecutor); N.J. Stat. Ann. § 2A:158-1 *et seq.* (setting forth appointment process, term, powers and duties of the county prosecutor); *cf. Coleman v. Kaye*, 87 F.3d 1491, 1499-1502 (3d Cir. 1996). "When [New Jersey] county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State." *Id.* at 1505. To the extent that the Middlesex County Prosecutor's Office is a governmental entity which is subject to suit under § 1983, it is entitled to absolute immunity under the Eleventh Amendment. *See Coley v. County of Essex*, 462 F. App'x 157, 161 (3d Cir. 2011); *Beightler v. Office of Essex County Prosecutor*, 342 F. App'x 829 832 (3d Cir. 2009).

C.  **Supplemental Jurisdiction**

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed

all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1284-1285 (3d Cir. 1993). In exercising its discretion, the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc.*, 983 F.2d at 1284 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers v. Gibbs*, 383 U.S. at 726; *Growth Horizons, Inc.*, 983 F.2d at 1284-85. In this case, the Court is dismissing every claim over which it had original subject matter jurisdiction at an early stage in the litigation and declines to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

### III.  CONCLUSION

Based on the foregoing, this Court will dismiss the federal claims raised in the Complaint and decline to exercise supplemental jurisdiction.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**United States District Judge**

Dated: 4/12/13